IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

HARTFORD FIRE INSURANCE COMPANY                            PLAINTIFF

v.                       Case No. 2:14-CV-02096

THE HARRIS COMPANY OF FORT SMITH, INC.                     DEFENDANT/
                                                           THIRD-PARTY PLAINTIFF
v.

LIMESTONE DEVELOPMENT, LLC and
ARK-CON TESTING SERVICE, INC.                              THIRD-PARTY DEFENDANTS

## OPINION AND ORDER

Now pending before the Court are Defendant/Third-party Plaintiff The Harris Company of Fort Smith, Inc.'s ("Harris Company") Motion to Compel Discovery (Doc. 39) and brief in support; Plaintiff Hartford Fire Insurance Company's ("Hartford Fire") Response (Doc. 42) and brief in support, and Harris Company's Reply (Doc. 48). Hartford Fire's Response also contained a Motion to Quash the subpoena directed to James Reddick and Guest+Reddick, Inc., as well as a Motion for Protective Order concerning the documents that are the subject of Harris Company's Motion to Compel. The Court held a telephonic hearing on the pending Motions on May 14, 2015, at which time counsel had the opportunity to present oral argument. The documents withheld due to privilege were presented to the Court for *in camera* inspection. Following its review of the documents, the Court sent a letter to counsel (Doc. 54) on June 29, 2015, requesting answers to particular questions; and counsel promptly responded to the Court's letter on June 30, 2015 (Doc. 55).

## I. PERTINENT BACKGROUND

This lawsuit arises out of a construction project at the Ft. Smith National Cemetery, which is owned and maintained by the United States Department of Veterans Affairs. Third Party Defendant, Limestone Development, LLC ("Limestone") was the original general contractor for the project. Separate Defendant, the Harris Company, was a subcontractor. Hartford Fire was the surety of a performance bond issued to insure proper performance of the construction contract between Limestone and the United States. Limestone defaulted on the construction contract, at which point Hartford Fire assumed the role of successor general contractor, as well as the obligation to perform the contract and complete the construction project. Hartford Fire now brings this subrogation lawsuit to recover monies from the Harris Company because of certain subcontracted work that, allegedly, was either not performed or improperly performed. A discovery dispute exists concerning the validity of Hartford Fire's assertion of privilege over certain documents the Harris Company seeks to have produced.

## II. MOTION TO COMPEL

### A. Documents Hartford Fire Prepared in Anticipation of Litigation or Trial

Information or documentation is protected by the work-product privilege when "prepared or obtained because of the prospect of litigation." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987). Furthermore, Federal Rule of Civil Procedure 26(b)(3)(A) holds that documents produced by non-attorneys in anticipation of litigation may be shielded from production by the work-product privilege. *See, e.g., Diversified Indus., Inc., v. Meredith*, 572 F.2d 596, 604 (8thh Cir. 1977) ("[T]he concept of work

product is not confined to information or materials gathered or assembled by a lawyer."). In general, it can be said that the work-product privilege is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975). Accordingly, business records prepared by party representatives, such as Luis Copat or Marc-Andre Levigne, may be entitled to work-product privilege if prepared in anticipation of litigation. If such records "were specifically selected and compiled by the other party or its representative in preparation for litigation and that the mere acknowledgment of their selection would reveal mental impressions concerning the potential litigation," then the privilege will apply. *Petersen v. Douglas Cnty. Bank & Trust Co.*, 967 F.2d 1186, 1189 (8th Cir. 1992). If, however, the documents in question were merely transferred to an attorney or litigation department, or "assembled in the ordinary course of business or for other nonlitigation purposes," privilege will not apply. *Id.* (citing *Simon*, 816 F.2d at 401).

Based on its *in camera* inspection of the documents in question, the Court finds that Hartford Fire has properly asserted privilege as to a majority of the documents described on its privilege log. However, the Court finds that a distinction needs to be revisited as between documents Hartford Fire generated in anticipated of subrogation litigation, versus documents that it generated in the normal course of its role as successor general contractor. The latter are not necessarily privileged, as they were not necessarily generated "because of the prospect of litigation," but instead during the ordinary course of business. However, when Hartford Fire stepped out of its role as general contractor and turned its attention to the pursuit of subrogation remedies to recover monies spent in performance of the bond, the documents generated from that point onward were likely created in anticipation of trial and thus protected by the work product privilege.

3

The Court notes that DeVlieger Hilser P.C., a law firm, was retained by Hartford Fire on September 1, 2011 (*see* Doc. 55). It follows that privilege log documents created after this date, which concern Hartford Fire's subrogation/mitigation remedies and strategies, would be privileged—and the Court's *in camera* review confirms that to be the case. However, documents generated prior to that date may not be privileged, as they may have been generated by Hartford Fire in the ordinary course of business while serving in the role of general contractor.

Accordingly, Hartford Fire is **ORDERED** to undertake further review of all privilege log documents generated prior to September 1, 2011, and to closely scrutinize and identify any documents which relate to Hartford Fire's role or purpose in completing construction (*i.e.* documents which were not specifically generated in anticipation of litigation). Hartford Fire must produce any such documents by no later than **JULY 31, 2015**.

### B. Documents Provided/Exchanged with Guest+Reddick before February of 2012

At some point after Hartford Fire was called upon to complete the construction project, it retained the Guest+Reddick architecture firm to serve as the project architect. The firm was initially retained in the ordinary course of business with regard to Hartford Fire's role as surety, to complete the construction project at the National Cemetery project. James Reddick and David Conyers were the principal architects working on the project for Hartford Fire, and their work—at least initially—was not that of a retained expert for purely litigation purposes. However, in February, 2012, Mr. Reddick was asked to assist Hartford Fire with documenting the basis of a formal claim letter being sent to the Harris Company demanding payment of money damages for alleged failure to perform obligations pursuant

4

to the terms of its subcontract. Later, on or about April 4, 2012, Hartford Fire specifically asked Mr. Reddick to serve as an expert witness. Pursuant to Fed.R.Civ.P. 26(b)(4), communications with experts and drafts of their expert reports are not discoverable, except as stated in the rule. However, Guest+Reddick's communications and work product performed in furtherance of completing the construction project are not privileged. Hartford Fire is therefore **ORDERED** to produce all documents and communications provided or exchanged—prior to February 2012—between its party representatives and Mr. Reddick (and/or other representatives of Guest+Reddick), to the extent such documents have not been produced already. A few examples observed by the Court would include: HFIC 22731-22732, HFIC 22737-22739, and HFIC 22743-22750.

With all of that said, if it is later established that Mr. Reddick's opinions *are* based on documents or communications that have not been produced, then Hartford Fire bears the risk at trial or on motions in limine that Mr. Reddick's opinions will be precluded and/or stricken.

### C. Communications between Hartford Fire and Third Parties

Hartford Fire apparently agrees that documents concerning communications exchanged by or provided to third-parties are not subject to privilege. This is evidenced by Hartford Fire's voluntary withdrawal of privilege and its more recent production of certain documents as itemized in a May 21, 2015 letter to the Court. However, the Court's review of the remaining privilege log documents reveals a large number of emails that are to, from, or cc'd to third parties that have not yet been produced.[1] Accordingly, Hartford

---

[1] This would include, but is not limited to, emails that are to, from, or cc'd to representatives of the following: U.S. Department of Veteran's Affairs (Jessie Magee, Shaquana Cooper,

5

Fire is **ORDERED** to conduct a thorough review of all privilege log documents so as to isolate and identify communications with third parties. Hartford Fire must produce any such documents, to the extent not already produced, by no later than **JULY 31, 2015**.

### D. Memorandum Referenced on Page 15 of Reddick's Deposition

The Court was provided *in camera* with a copy of the memorandum in question and finds it to be a classic example of attorney work product, and a privileged communication pursuant to Rule 26(b)(4)(C). In addition, Mr. Reddick testified that he did not rely on this memorandum in forming the basis of his expert opinion. Based on the Court's review of the memorandum, it finds Mr. Reddick's testimony in this regard to be credible and accurate.

### III. MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH

Within Hartford Fire's Response (Docs. 42 and 43) it seeks a Protective Order for the documents identified on its privilege log. This request is essentially the mirror image of the Motion to Compel. Thus, the request will be **GRANTED IN PART AND DENIED IN PART**, to the same extent and for the same reasons as set forth in the Court's ruling above with respect to the Motion to Compel.

On April 21, 2015—the same date that it filed the instant Motion to Compel—the Harris Company issued separate Subpoenas Duces Tecum to James Reddick and Guest+Reddick, Inc. The subpoenas (Doc. 45) essentially commanded production of the

---

Michael Ouellette, and Nikki Gardner); the Forth Smith National Cemetery (Craig LaChance); Limestone (G.L. Harvie and Nate Gibson); and Traveler's Insurance (Brenda Johnson). Although this is not intended to be an all-inclusive list of third party representatives, a word search of the *in camera* documents produced several hundred "hits" on these names.

entire files maintained by Mr. Reddick and/or Guest+Reddick relating to the construction project. In its Response (Docs. 42 and 43) Hartford Fire seeks an order quashing these subpoenas and a protective order for the Guest+Reddick documents identified on its privilege log. Based on the Court's *in camera* inspection of these documents, and consistent with the reasons stated in the Court's ruling above, Hartford Fire's Motion to Quash and for Protective Order (within Docs. 42 and 43) is **GRANTED**, subject to the following caveats. First, Hartford Fire need not produce James Reddick's (and/or other members' of Guest+Reddick) privilege log documents generated from February 1, 2012 through the present time. However, for the reasons stated and pursuant to the Court's ruling above, all Reddick (and/or Guest+Reddick) privilege log documents generated prior to February 2012 must be identified and produced. Secondly, The Harris Company may—if it so chooses—take a supplemental deposition of Mr. Reddick limited to questions or issues raised by Hartford Fire's supplemental document production in compliance with this Order.

## IV. CONCLUSION

The Court finds that, except in particular instances, the documents submitted for *in camera* inspection were properly withheld by Hartford Fire based on attorney-client privilege, work-product privilege, and/or the expert materials protected by Fed.R.Civ.P. 26(b)(4). **It Is Therefore Ordered** that the Harris Company's Motion to Compel (Doc. 39) is **GRANTED IN PART AND DENIED IN PART** as follows:

> First, Hartford Fire must further review its privilege log documents generated prior to September 1, 2011, for the purpose of identifying documents in furtherance of completing the construction project, *i.e.* documents not specifically generated in anticipation of litigation. **It is Ordered** that all such

identified documents must be produced to the Harris Company by no later than **JULY 31, 2015**.

Second, Hartford Fire must review its privilege log documents and identify all documents/emails sent to, from, or cc'd to Mr. Reddick (or any other member of the Guest+Reddick firm) prior to February 2012. **It is Ordered** that all such documents must be produced by no later than **JULY 31, 2015**.

Third, Hartford Fire must search for, identify, and produce all communications and documents sent to, from, or cc'd to "third parties"—per the explanation above. **It is Ordered** that all such documents must be produced by no later than **JULY 31, 2015**.

Finally, Hartford Fire need *not* produce the "memorandum" referenced by Mr. Reddick in his deposition.

**It Is Further Ordered** that Hartford Fire's Motion for Protective Order (within Docs. 42 and 43), pertaining to the same documents sought to be produced by the Motion to Compel, is **GRANTED IN PART AND DENIED IN PART,** for the same reasons and to the same extent as set forth in the ruling above.

**It Is Further Ordered** that Hartford Fire's Motion to Quash and for Protective Order (within Docs. 42 and 43) is **GRANTED**, subject to the caveats set forth above.

**IT IS SO ORDERED** this 16th day of July, 2015.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

8