IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

HARTFORD FIRE INSURANCE
COMPANY                                                                                  PLAINTIFF

V.                                  CASE NO. 2:14-CV-2096

THE HARRIS COMPANY OF
FORT SMITH, INC.                                                                          DEFENDANT/
                                                                                     THIRD PARTY PLAINTIFF

V.

LIMESTONE DEVELOPMENT, LLC and
ARK-CON TESTING SERVICE, INC.                                   THIRD-PARTY DEFENDANTS

**OPINION AND ORDER**

Currently before the Court are The Harris Company of Fort Smith's ("Harris") Motion in Limine (Doc. 59), and Hartford Fire Insurance Company's ("Hartford") Response. For the reasons discussed herein, Harris's Motion is **GRANTED IN PART AND DENIED IN PART**.

**I.  DISCUSSION**

The background facts of this matter are set forth in detail in the Court's Order adjudicating the other pending motions in this case. (Doc. 82). In short, the case stems from the expansion of the Fort Smith National Cemetery (the "Cemetery") in Fort Smith, Arkansas. Following several alleged issues with the construction—including the failure of the equipment maintenance building structure (the "Building")—Limestone, the general contractor, defaulted, and its indemnitor, Hartford, filed suit against Harris, a subcontractor on the project.

1

Harris filed its First Motion in Limine on August 31, 2015, asking this Court to prevent Hartford's expert witness, James Reddick, from testifying about the "causation of the structural failure of the Building or other engineering issues." (Doc. 59, p. 3). Whether Reddick's testimony is admissible on these issues is governed primarily by Federal Rule of Evidence 702. The requirements of Rule 702 have been summarized by the Eighth Circuit into a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014) (quoting *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008)). Rule 702 implements a liberal admission standard, and courts should accordingly "resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006). However, "a court should not admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" and, "[w]hen the analytical gap between the data and proffered opinion is too great, the opinion must be excluded." *Id.* (quotation omitted).

The first issue raised by Harris's Motion is whether Reddick should be allowed to testify about the causation of the structural failure of the Building. As a part of its sub-contract with Limestone, Harris was tasked with performing earth-fill work for the site upon which the Building was to be constructed. Broadly speaking, this process involves the removal of soil unsuitable to build upon, followed by the layer-by-layer addition of

suitable soil. The end result of this process is commonly referred to as a building pad. In order to be suitable to build upon, the added soil must have certain compaction rates and moisture contents. Typically, the general contractor or owner of a project hires a company to test the added soil to ensure that it is satisfactory. That company will then "pass" or "fail" the soil based on whether its compaction rate and moisture content meet the project's specifications. In this case, Limestone contracted with Ark-Con Testing Service ("Ark-Con") to provide this testing service. Ark-Con tested the soil based on a 95% compaction rate and found that Harris's earth-fill work passed on this basis. However, while some versions of the project specifications possibly included this 95% compaction rate, other, possibly later, versions included a 98% compaction rate. Based on a 98% compaction rate, only one of the measurements of Harris's work taken by Ark-Con would have passed.

After construction of the Building began atop of Harris's earth-fill work, the Building structure began to settle—i.e. sink into the ground by some amount—and eventually crack. While some remedial measures were discussed and attempted, the structure was ultimately torn down, the earth-fill work was redone by a third party, and the Building was re-built.

After the original Building structure failed and Hartford took over supervision of the project for Limestone, Hartford hired Reddick, an architect, to help complete the project. Hartford later retained Reddick as an expert witness in the instant matter. On February 9, 2015, Reddick authored a report that assigned to Harris the cost of replacing the Building based on its failure to comply with the 98% compaction rate. He wrote:

> The fact that the pad failed is evidence that the industry standard was not followed by Harris for this work and *thus the damages were all caused by this failure to comply*.
>
> The Building pad was the responsibility of Harris Company to construct. Of the seven (7) field densities taken on the building pad, including retesting of failed portions, only one (1) reached the minimum specified density of 98% Standard Proctor. In the opinion of this writer, Harris failed to meet the industry's established "standard of care" and thus has assessed the damages to be $234,970.00.

(Doc. 70-12, p. 5) (emphasis added). Reddick was questioned about this conclusion during his deposition, and he testified in relevant part as follows:

> Q: You are not an engineer?
> A: No, sir.
> Q: You do not intend to express any engineering opinions in this lawsuit, correct?
> A: No, sir.

(Doc. 61-6, p. 43).

> Q: The conclusion that the pad failed, I assume you're talking about from a structural standpoint; is that correct?
> A: Yes.
> Q: And would you agree with me that a structural failure is an engineering question?
> A: Yes.

(Doc. 61-6, p. 78).

> Q: Are you aware of any engineer that has said or opined that a 3 percent difference between the 98 percent and the 95 percent compaction rate caused or contributed to this building's failure?
> A: I haven't talked to any about it.
> Q: Are you aware of any opinion along those lines?
> A: No.
> Q: And you do not have any knowledge or expertise with regard to whether or 3 percent [sic] difference would cause or contribute to a building failure, would you?
> A: It would be a question I would ask a structural engineer.
> Q: And so you do not – go ahead.
> A: If there were discrepancies that I was concerned about, I would depend upon my engineer to tell me whether they were significant or insignificant.

4

> Q: You're not going to express those opinions, because you're not an engineer?
> A: Correct.
> Q: So why have you not asked an engineer whether the 3 percent discrepancy would have caused the building failure in light of the fact you're giving the opinion in this lawsuit that the pad and the building failed because of a 3 percent compaction difference?
> A: Well, because my experience is that there's often a swing of 5 percent in contract documents, depending upon what you're trying to do with the soil and what it's under. And so, if 5 percent is significant, I would think 3 percent would be pretty significant as well. That's just my opinion.
> Q: Well, that's your opinion, but that's not a professional opinion.
> A: True.
> Q: And you don't have any engendering [sic] expertise to make that statement?
> A: Just my experience of reading specs and writing specs for 35 years.
> Q: And, again, the question is: You do not have an engineering basis to give that opinion?
> A: No.

(Doc. 61-6, pp. 90-91).

Applying Rule 702 and the Eighth Circuit's three-factor test, Reddick is not an expert who is qualified to testify as to the causation of the structural failure of the Building. In his report, Reddick opines that the damages to the building structure "were all caused by" Harris's failure to comply with the 98% compaction rate. (Doc. 70-12, p. 5). When pressed on how he came to that conclusion, however, Reddick unambiguously demonstrated that he is not "qualified to assist the finder of fact" on this matter, nor is his offered evidence "reliable or trustworthy in an evidentiary sense." *Johnson*, 754 F.3d at 561. Rather, Reddick stated that he would have to consult a structural engineer to determine whether a 3 percent difference would cause or contribute to building failure. He further admitted that his conclusion that "3 percent

would be pretty significant" was just his opinion, based on his understanding of construction contracts, and that it was not a "professional opinion." (Doc. 61-6, p. 91).

Reddick has, in other words, specifically disavowed his expertise in this area. *See American Auto. Inc. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 723 (8th Cir. 2015) (affirming a district court's decision to exclude expert testimony regarding product design and warnings after a metallurgy expert "specifically disavowed" his expertise in those areas). It is not unusual for district courts to limit the scope of an expert's testimony to ensure that it does not exceed his area of expertise. "We have found no abuse of discretion in the limitation of the testimony of witnesses who, although considered experts in certain areas, were not well-versed in the particular discipline relevant to their testimony." *Smith v. Rasmussen*, 249 F.3d 755, 759 (8th Cir. 2001) (listing cases). This task of ensuring that an expert's testimony does not exceed its proper scope is particularly important for the district court to undertake when the testimony goes directly to "the primary issue upon which the jury ha[s] to make a judgment." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (reversing a district court's decision to allow an expert in flood management to testify about the standard of care required in the warehouse industry). Given this Court's "gatekeeping responsibility to 'ensure that an expert's testimony rests on a reliable foundation and is relevant to the task at hand,'" allowing Reddick to testify to the causation of the structural failure of the Building would be an abuse of its discretion and a dereliction of its gatekeeping duties. *Id.* at 714-15 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)).

Harris next asks the Court to bar Reddick from testifying about "other engineering issues." While Reddick did state during his deposition that he was not an engineer and did not intend to express any engineering opinions, the Court finds Harris's Motion to be far too broad to grant. This is so primarily because there is a substantial overlap between the responsibilities of an engineer and an architect. Indeed, this overlap has been recognized by many courts. *See Sch. Dist. No. 11 v. Sverdrup & Parcel and Assoc., Inc.*, 797 F.2d 651 (8th Cir. 1986) (engineer was qualified to offer opinion in regard to performance of architect); *Corner Pocket v. Travelers Ins.*, 2013 WL 3993967, *4 (W.D. Pa. Aug. 5, 2013) (architect was qualified to testify about an engineering matter because "the roles of architects and engineering intersect significantly"); *Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 2009 WL 2408412 (E.D. La. July 28, 2009) (architect was qualified to testify about an engineering matter).

Reddick has nearly 40 years of experience as an architect, and has been President of Guest+Reddick Architects, Inc. for nearly a decade. His qualification as an expert architect cannot be disputed. Given the overlap in job responsibilities and the resulting difficulty in precisely defining what constitutes an engineering issue versus an architectural one, the Court cannot say that Reddick's substantial experience as an architect leaves him unqualified to opine on any issue that may be categorized as an engineering one. Certainly, there are some engineering issues—such as the causation issue discussed above—that exceed the scope of Reddick's expertise. But to categorically bar Reddick from testifying about so-called "engineering issues" would be beyond what Rule 702 allows.

To summarize, Reddick is prohibited from testifying about the causation of the structural failure of the Building. However, due to the difficulty in defining what constitutes an engineering issue versus an architectural one, and due to the overlap between the duties of an engineer and an architect, he is not categorically barred from testifying about what might be classified as engineering issues. Instead, the Court will determine the propriety of his testimony on such issues on a case-by-case basis. Harris's First Motion in Limine (Doc. 59) is, therefore, **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED** on this 12th day of November, 2015.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE